# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

DAVID HOUSTON BENEFIELD,

    PLAINTIFF,

VS.                                                                    CASE NO.: CV-09-J-800-E

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This

Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff is seeking reversal

or remand of a final decision of the Commissioner.  All administrative remedies have

been exhausted.

## Procedural Background

The plaintiff applied for Disability Insurance Benefits and Supplemental

Security Income on November 1, 2005, alleging an inability to work since February

4, 2005 (R. 65),[1] due to back pain, leg pain, and his leg "going out" on him (R. 91).

The administrative law judge (ALJ) reached a determination that the plaintiff was not

disabled at any time through the date of his decision, August 29, 2008 (R. 35).  The

---

[1]Although the plaintiff attempted to continue working after February 2005, his work
attempts were found to be below the substantial gainful work activity level (R. 104).

plaintiff appealed this decision to the Appeals Council which denied his request for

review on February 24, 2009 (R. 4-6).   The ALJ's decision thus became the final

order of the Commissioner.  *See* 42 U.S.C.§ 405(g).  This action for judicial review

of the agency action followed (doc. 1).  The plaintiff argues that the ALJ's decision

is not supported by substantial evidence; that the ALJ failed to properly apply the

three part pain standard as set forth by the Eleventh Circuit Court of Appeals; and that

the ALJ failed to give proper weight to the opinions of plaintiff's treating physicians.

Plaintiff's brief (doc. 9).

The court has considered the record and the briefs of the parties.  For the

reasons set forth herein, this case is **REVERSED** and **REMANDED.**

### Factual Background

The plaintiff was born on May 8, 1956, and has a twelfth grade education (R.

364-365).  He testified that he was unable to work due to pain (R. 371). He stated that

> I have two ulcerated discs in my back and I thought for a while that my,
> my leg, it gets numb from my knee up to my thigh and when I was
> doing, still in the working the more my back would hurt and my leg had
> went out on me a couple of times so that got me off the vinyl siding
> work that I did because I was afraid to get on ladders anymore there.  So
> I tried to get in other fields or tried to get on the ground work and it just,
> before I got on pain relievers and all my leg would just get to where I
> couldn't, it was just burning me up.  It hurt worse than my back did and
> the doctor now said that my pain in my leg and my back is not
> connected.  It's two separate –

R. 371.  The plaintiff also had liver and kidney failure, (R. 372, 376), a portion of his colon removed resulting in ongoing stomach problems (R. 373), and is on medication for depression (R. 373-374).  He has to lie down during the day to relieve his back pain[2] (R. 378).  He testified that his right leg is numb all the time and if he moves around, when his back starts hurting, he gets stinging pain up and down his leg as well (R. 381, 383).  The plaintiff estimated he can walk no more than a block before his back hurts, that he can stand five to six minutes at a time, and that he can sit 20-30 minutes before he has to get up and stretch (R. 384).  The plaintiff further stated that he needs a buggy to carry a gallon of milk in a grocery store (R. 384).

At the hearing, the vocational expert (VE) testified that all of the plaintiff's prior work was in construction at the medium to heavy level, and would provide no transferrable skills to light or sedentary jobs (R. 388-389).  The ALJ asked the VE to consider an individual of advanced age with a high school education who could perform medium work with limitations of occasional bending, stooping, crawling, or climbing, no right leg pushing or pulling, no driving, no unprotected heights, in need of a temperature controlled environment, with mild to moderate pain and mild to moderate depression (R. 389).  The VE testified that such an individual could not perform the plaintiff's past relevant work, nor any medium work activities (R. 389).

---

[2]As of the date of the hearing, the plaintiff had been referred to, but not yet started, physical therapy (R. 379-380).  No documentation as to the results of this therapy appear in the record.

However, work at the light and sedentary levels would exist in significant numbers (R. 389-390). The requirement of a sit/stand option would reduce the number of light level jobs available, but would have no impact on the number of sedentary jobs that could be performed by such an individual (R. 391-392).

The medical evidence in the record at the time of the hearing demonstrates that the plaintiff has had multiple medical problems since 2004. He was hospitalized from January 16-19, 2004, for diverticulitis (R. 149-152). From May 4-10, 2004, the plaintiff was again hospitalized due to diverticulitis (R. 159-163). He was admitted again May 28, 2004 through June 16, 2004, due to yet another bout of diverticulitis, for which he underwent colon resection surgery (R. 164, 188).

An exam by Dr. James Williams in September 2005 reflected that the plaintiff suffered from high blood pressure, diverticulitis, and a history of back pain, broken teeth and multiple traumas (R. 212). Dr. Williams noted the plaintiff was unable to sit for any length of time due to back pain (R. 212). He diagnosed the plaintiff as suffering from moderate hypertension and back pain, for which Dr. Williams prescribed Percocet (R. 213). Dr. Williams also provided the plaintiff with a note to enable him to receive charity medical care (R. 213). Also in September 2005 the plaintiff had a cancerous tumor removed from his left eyelid (R. 215-217, 220-223). Those medical records also reflect the plaintiff's complaints of back pain (R. 223-224).

Medical records from the health clinic where plaintiff receives care reflect complaints of severe back pain and note the plaintiff complained he was unable to sleep or work  (R. 227, 229, 231-232, 233).  He rated the pain as ranging from a five to an eight out of ten (R. 227, 229, 231, 233).  Decreased range of motion and muscle spasms were noted in plaintiff's lower spine (R. 227, 229, 231).  His doctor advised the plaintiff to apply for disability (R. 228).  The records further reflect plaintiff's inability to afford an MRI which had been prescribed due to low back pain (R. 229, 232, 252).  The plaintiff was also noted to ambulate with difficulty (R. 231).  He was referred for a bone density test which noted osteopenia (R. 237, 243), and osteoporosis was added to his list of ailments (R. 238).

X-rays of the plaintiff's lumbar spine in September 2005 reflect demineralization of the osseous structures,[3] but no compression fracture or disc space narrowing (R. 244, 248).

The plaintiff was referred by the Social Security Administration for a consultative examination to Dr. C.K. Jin in January 2006 (R. 253).  Dr. Jin opined that the plaintiff suffered from lumbar disc disease, basal cell carcinoma of the left eyelid (surgically removed), diverticulitis, and hypertension (R. 253).  The plaintiff was noted to be able to squat, but not able to stand up without assistance, able to walk

---

[3]This is a characteristic of osteoporosis.

slowly, and able to walk on heels and toes (R. 254). Dr. Jin's diagnoses included lumbar disc disease (R. 254). He listed the plaintiff's prognosis as "Fair" and concluded that "[t]his patient has lumbar disc disease and may be able to go to vocational rehab. Then he may have some productive job later on" (R. 254).

In contrast, the state agency medical consultant completed a Physical Residual Functional Capacity Assessment form by checking the boxes equivalent to the plaintiff being able to perform work at the medium level, with no limitations on his ability to push and/or pull, but with a limitation against climbing ladders, ropes and scaffolds (R. 259-266).

One of plaintiff's treating physicians, Dr. Larry Wade, stated in December 2006 that the plaintiff had numerous complaints of chronic low back pain requiring muscle relaxers, narcotic analgesics and anti-inflammatory medications (R. 268). He noted that the plaintiff complained his pain had increased and radiated into his right leg, greatly limiting the plaintiff's ability to engage in sustained physical activity (R. 268). On examination Dr. Wade found bilateral paraspinous muscle tenderness with spasm and pain radiating into plaintiff's right leg (R. 268). Dr. Wade concluded that "[g]iven the chronicity of his pain it is my opinion that his chronic low back pain will not improve" (R. 268). Dr. Wade's treatment records include diagnoses of hepatitis C, GERD, hypertension, low back pain, and anxiety disorder (R. 341-342). His records reflect that Ultram was not controlling the plaintiff's back pain (R. 339).

The plaintiff was again a hospital inpatient from January 15, 2007, until January 23, 2007, for acute renal failure and acute liver failure, chest pain, hypertension, chronic back pain, depression and a history of colon resection (R. 270, 281).  He was noted to have suffered nausea, vomiting, weakness and diarrhea for two weeks preceding this hospital admission, which caused his renal failure (R. 276-277).

The plaintiff has also been followed by Dr. Dorothy Nelder.  He complained of back pain and pain going down his left leg (R. 335).  The plaintiff reported that his knee had gone out on him twice and that the skin on his right thigh was numb (R. 335).  Dr. Nelder's records reflect that pain medication (Lortab Plus) prescribed for the plaintiff did not help if he engaged in any activity and that he was still having right-sided radiculopathy despite a negative MRI (R. 334, 335).  She noted that plaintiff's pain worsened with activity and that he suffered from diffuse lumbar tenderness and a decreased range of motion (R. 334, 335, 337).

Dr. Nelder referred the plaintiff to Dr. Olga Bogdanova, a neurologist, due to his ongoing back and right leg pain (R. 345).  Dr. Bogdanova referred him for EMG and nerve conduction studies of his right leg, which showed no radiculopathy (R. 344, 348).  A Lidoderm patch for his lower back did not help his pain at all (R. 344).  Dr. Bogdanova diagnosed the plaintiff with meralgia paresthetica on the right (R.

344, 347).  She prescribed Lyrica[4] and noted that if it did not help, she might consider repeating the MRI of plaintiff's lumbar spine (R. 344).  Upon examination, Dr. Bogdanova noted the plaintiff has normal motor strength in all muscle groups and gait and station were normal (R. 347).  She further noted his exam was significant for decreased sensation on his right hip (R. 347).  The plaintiff reported that Lyrica did not help his symptoms, but he did not take it as prescribed (R. 358).  On September 4, 2007, Dr. Bogdanova again referred the plaintiff for an MRI[5] (R. 358).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).  If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy.  *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the  correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Martin v. Sullivan*,

---

[4]Lyrica is commonly used to treat the pain associated with fibromyaligia.  *See* http://www.lyrica.com/fibro_homepage.aspx.

[5]The results of this MRI are not contained in the record.

894 F.2d 1520, 1529 (11ᵗʰ Cir.1990).  "Substantial evidence" is generally defined as

"such relevant evidence as a reasonable mind would accept as adequate to support a

conclusion."  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v.

NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400

(11ᵗʰ Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11ᵗʰ Cir.1983).  This

court also must be satisfied that the decision of the Commissioner is grounded in the

proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d

1077, 1080 (11ᵗʰ Cir.1988); *Bridges v.  Bowen,* 815 F.2d 622, 624 (11ᵗʰ Cir.1987);

*Davis v. Shalala*, 985 F.2d 528 (11ᵗʰ Cir.1993).  No presumption of correctness

applies to the Commissioner's conclusions of law, including the determination of the

proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233,

1235 (11ᵗʰ Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11ᵗʰ Cir.1991).

Furthermore, the Commissioner's "failure to ... provide the reviewing court with

sufficient reasoning for determining that the proper legal analysis has been conducted

mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined

effects of all impairments.  *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*,

914 F.2d 222, 226 (11ᵗʰ Cir.1990); *Walker*, 826 F.2d at  1001.  When more than one

impairment exists, the plaintiff may be found disabled even though none of the

impairments considered alone would be disabling.  *Id*.  The ALJ must evaluate the

combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11ᵗʰ Cir.1990).  Merely reciting that the plaintiff's impairments in combination are not disabling is not enough.  The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ found that the plaintiff suffered from lumbar disc disease; skin cancer of the left eye, by history, resolved; diverticulitis, partial resection of the colon, resolved; hypertension and obesity, which are severe impairments, but none of which, singly or in combination, met or medically equaled the criteria of any of the listing of Impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 26).  The ALJ did not include plaintiff's history of kidney failure, liver failure, or osteoporosis in the list of severe impairments.

The ALJ considered the plaintiff's subjective complaints of pain, but found the plaintiff's testimony about his pain to be not credible in light of his finding that "objective medical evidence as a whole does support the severity of the symptoms alleged by the claimant.  Additionally, his conditions are not of the severity that they could reasonably be expected to give rise to his alleged symptoms" (R. 27). The ALJ concluded that the plaintiff could perform a limited range of light work and therefore

he was not disabled at any time through the date of the decision (R. 34-35).  The ALJ

determined that the plaintiff had a residual functioning capacity to perform work at

the "light" level, with further specific requirements of no more than occasional

bending, stooping, crawling or climbing, no pushing/pulling with the right  lower

extremity, no driving, no working around unprotected heights and the need for a

temperature controlled environment  (R. 34).  Based on the ALJ's conclusion that the

plaintiff could perform such work, he determined any testimony otherwise was not

credible (R. 31).

The ALJ thus discounted each of the plaintiff's five treating physicians and the

consultative examiner, completely ignoring the medical records of Dr. Williams, Dr.

Tariq, Dr. Jin, Dr. Wade, Dr. Nelder, and Dr. Bogdanova.   The ALJ's logic for such

a conclusion was that "none of the claimant's treating physicians have placed

restrictions on his ability to work" (R. 31).  Given that the plaintiff was not working,

none of these doctors would have any reason to place limitations on the plaintiff's

ability to work.  No doctor has stated that the plaintiff was malingering or drug

seeking.  Dr. Williams provided the plaintiff with a note to enable him to receive

charity medical care, noting that "[h]e is currently off work due to back pain" (R. 212-

213).  The health clinic where plaintiff sought care noted that the plaintiff "states he

is unable to sleep, work because of back pain" and that doctor advised the plaintiff

to apply for disability[6] (R. 227-228).  The consultative examiner opined that with

vocational training, the plaintiff "may have some productive job later on"[7] (R. 254).

Given these types of medical notations, the court finds the ALJ's conclusion that the

lack of any work restrictions means that the plaintiff can work to be in direct

contravention of all the medical evidence in the record.  In other words, the ALJ

simply ignored EVERY medical document before him.  The ALJ further chose to take

Dr. Wade's opinion that the plaintiff's back pain will not improve due to the

chronicity of it as support for the ALJ's finding that such mild to moderate pain

would not prevent the plaintiff from performing light work (R. 32).  This ignores Dr.

Wade's basis for his opinion, such as the plaintiff being positive for muscle spasms,

decreased range of motion, having difficulty walking and reporting pain ranging from

a 5 to an 8 (R. 227-231).

Having thus disposed of all of the medical evidence by doctors who actually

examined the plaintiff, the ALJ opted to place "significant weight in the opinion of

the state agency medical consultant... who was of the opinion that the claimant was

---

[6]The ALJ recognizes that Dr. Tariq advised the plaintiff to apply for disability, but then states that Dr. Tariq did not indicate any specific limitations (R. 31).  Given that the suggestion of disability would reflect an opinion that the plaintiff can perform NO gainful employment, the court finds the ALJ's basis for rejecting this as evidence of Dr. Tariq's opinion to be without merit or logic.

[7]With regard to this statement of Dr. Jin, the ALJ chose to give it no credence because Dr. Jin did not list any specific limitations (R. 32).  Given Dr. Jin's statement that perhaps with vocational rehab the plaintiff may be able to have a productive job, the only logical conclusion from this is that Dr. Jin does not believe the plaintiff can be productive as is.

capable of performing work at the medium level of exertion" (R. 32).  The ALJ then

recognizes that (a) a non-examining physician's opinion "does not... deserve as much

weight as those of examining or treating physicians," and (b) that the plaintiff actually

has greater limitations that those credited by the state agency medical consultant (R.

32).  Thus, it is really only his own medical opinion on which the ALJ relies.

This court finds that the records of the treating and consultative physicians in

evidence support each other. No medical evidence contradicts these physicians'

conclusions, and none of them opined that the plaintiff was malingering.  Rather, they

demonstrate that each of the plaintiff's treating physicians took his complaints

seriously and has tried to find both a source of and a treatment for the plaintiff's

symptoms.  The court finds the record devoid of substantial evidence to support the

decision of the ALJ.  The ALJ could only reach this conclusion by ignoring or

substituting his judgment for the medical evidence contained in the record.  The

Commissioner's "failure to apply the correct law or to provide the reviewing court

with sufficient reasoning for determining that the proper legal analysis has been

conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th

Cir.1991).

"[A]s a hearing officer [the ALJ] may not arbitrarily substitute his own hunch

or intuition for that of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837,

840-41 (11th Cir.1992).  *See also Graham v. Bowen*, 786 F.2d 1113, 1115 (11th

Cir.1986).  Under the "treating physician rule," an ALJ may not reject a treating physician's opinion without good cause. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991).  Good cause exists if the opinion is wholly conclusory, unsupported by the objective medical evidence in the record, inconsistent within itself, or appears to be based primarily on the patient's subjective complaints. *Id*.; see *Crawford v. Comm'r of Soc. Sec*., 363 F.3d 1155, 1159-60 (11th Cir.2004); *Lewis*, 125 F.3d at 1440.  None of these exceptions is relevant here.  All of the treating physicians, as well as the consultative physicians, reach the same conclusions as to the plaintiff's medical problems.  They each note objective manifestation, such as muscle spasms, of the plaintiff's complaints.

The ALJ cannot arbitrarily reject uncontroverted medical testimony.  *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); *see also Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985).  He also cannot reject the treating physicians' opinions in favor of a non-examining doctor.  "A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis." *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2nd Cir.1987); citing *Strickland v. Harris*, 615 F.2d 1103, 1009 (5th Cir.1980) ("the reports of physicians who did not examine the claimant, taken alone, would not be substantial evidence on which to base an administrative decision).

Here, multiple medical opinions concerning the plaintiff's pain are before the court.  By inferring that the plaintiff was able to work from his selective review of the evidence, the ALJ substituted his opinion for that of all of the medical reports in the file. The ALJ did not consider all of the evidence that was introduced.  His finding that the plaintiff is not disabled is against the substantial weight of the evidence.  This court finds that the substantial weight of the evidence dictates a finding that the plaintiff has been under a disability since February 2005 and therefore the plaintiff is entitled to benefits in accordance with this determination.

## Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made.  *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984).  Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner's determination is in plain disregard of the overwhelming weight of the evidence.  *Davis v. Shalala*, 985 F.2d at 534; *Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir.1984).   Here, the ALJ has disregarded the evidence in the record . Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby **ORDERED** that the decision of the Commissioner is

**REVERSED.**  This case is **REMANDED** to the Agency to calculate the plaintiff's

monetary benefits in accordance with this Opinion.

      **DONE** and **ORDERED** the 30th day of October, 2009.


                          INGE PRYTZ JOHNSON
                          U.S. DISTRICT JUDGE